UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
GENERAL REFINING CORPORATION, on
behalf of themselves and as Class Representatives
of all those similarly situated,

                Plaintiff,

-against-

FEDERAL EXPRESS CORPORATION,

                Defendant.
------------------------------------------------------------X

MEMORANDUM AND ORDER

CV 11-2778

(Wexler, J.)

APPEARANCES:

Lite and Russell
By: Frank S. Russell, Esq.
212 Higbie Lane
West Islip, New York 11795
Attorneys for Plaintiff

Federal Express Corporation
By:   Thomas W. "Trea" Southerland III, Esq.
      Terrence O. Reed, Esq.
      Senior Counsel - Litigation
3630 Hacks Cross Road
Building B, 2d Floor
Memphis, Tennessee 38125
Attorneys for Defendant

WEXLER, District Judge:

       Plaintiff General Refining Corporation ("General Refining" or "Plaintiff") brings this action, on behalf of themselves and as Class Representative, claiming breach of contract and mistake under New York law against defendant Federal Express Corporation ("FedEx" or "Defendant"). Defendant moves for summary judgment under the Federal Rules of Civil Procedure ("Fed.R.Civ.P."), Rule 56, claiming Plaintiff's mistake claim is preempted by the Airline Deregulation Act of 1978, 49 U.S.C. §§ 40101, *et seq.*; that Plaintiff's breach of contract

claim fails as a matter of law, and that no other claims are contained in the Seconded Amended Complaint ("Complaint"), and that the class claims under Rule 23 should be dismissed. Plaintiff opposes the motion. For the reasons that follow, Defendant's motion is denied in part and granted in part.

## BACKGROUND

I. Factual Background

The following relevant facts are taken from the parties Local Civil Rule 56.1 statements[1] and are undisputed, unless otherwise noted. Plaintiff is a precious metal refining company with offices in Hempstead, New York. Plaintiff's Rule 56.1 Statement ("Pl. 56.1 Stmt."), ¶ 1. Defendant FedEx is a certified all-cargo airline so designated by the U.S. Department of Transportation, effective March 7, 1972. See Declaration of Jackie Fowler in Support of Defendant's Motion for Summary Judgment ("Fowler Dec."), Exhibit ("Ex.") 1. Plaintiff has customers throughout the United States and has a long history of shipping its precious metals through Defendant FedEx. See Pl. 56.1 Stmt., ¶ 3; Defendant's Rule 56.1 Statement ("Def. 56.1 Stmt."), ¶ 7-9.

In 2006, General Refining and FedEx entered into a Declared Valuation Program contract ("DVX Agreement"), Pl. 56.1 Stmt, ¶ 7; Fowler Dec., Ex. 3. This Agreement offered higher

---

[1]The Court notes that in contravention of the Local Civil Rule 56.1, Plaintiff submitted its own separate statement of facts, instead of a counter-statement responsive in corresponding paragraphs to Defendant's statement of facts. Rather than deem Defendant's facts admitted as a result of Plaintiff's failure to properly or specifically respond to each fact as permitted in the rule, the Court will construe Plaintiff's submitted facts to be a response to Defendant's facts. Cf. Galindo v. Instalaciones de Tendidos Telefonicos, S.A., 508 Fed.Appx. 76, 79 (2d Cir. 2013) (summary judgment affirmed where appellant's failure to submit a Rule 56.1 statement permitted the district court to assume the truth of movant's facts). The facts outlined here are those which are undisputed when comparing both statements of facts.

declared values for precious metals of up to $25,000. Pl. 56.1 Stmt, ¶ 7; Def. 56.1 Stmt., ¶ 13. The 2006 DVX Agreement referenced terms and conditions stated in the FedEx Service Guide. Pl. 56.1 Stmt, ¶ 9; Def. 56.1 Stmt., ¶ 15. See also Fowler Dec., Ex. 3: 2006 DVX Agreement at 1 ("All shipments made under the Agreement are subject to the terms and conditions of the FedEx Service Guide in effect at the time of shipment, which terms and conditions are incorporated in into the Agreement by reference.")

In 2009, a new DVX Agreement was executed, which superseded the 2006 Agreement. This increased the declared value on certain shipments to $50,000.00. Fowler Dec., Ex. 4: 2009 DVX Agreement, ¶ 6. Like the 2006 Agreement, it also incorporated the terms of the FedEx Service Guide. Pl. 56.1 Stmt, ¶ 9; Def. 56.1 Stmt., ¶ 20; Fowler Dec., Ex. 4: 2009 DVX Agreement ("2. Each shipment made under this Addendum is subject to the terms and conditions of the FedEx Service Guide in effect at the time of shipment and which terms are incorporated into this Addendum by reference.")

By letter dated February 11, 2011, General Refining wrote to FedEx claiming that it was being "charged for insurance that FedEx is not providing" and demanding that the charges cease and that FedEx return "the excess insurance premiums [General Refining] paid for packages that were only insured for $1,000 according to FedEx" over the past six years. Pl. 56.1 Stmt, ¶ 12; Def. 56.1 Stmt., ¶¶ 25, 29-31; Deposition of Peter Spera, Ex. S: Letter of February 11, 2011.

The demand that FedEx return Plaintiff's perceived overpayment is the essence of this dispute. FedEx claims that the terms and conditions that define General Refining's shipping contracts preclude seeking six years' worth of refunds, and that General Refining did not follow the proper procedure to entitle them to any refunds. Furthermore, FedEx claims that General

Refining had no authority to permit it's customers to use it's FedEx account to ship items, and that those customer's failure to comply properly with Plaintiff's shipping contracts created the issues disputed here. Def. 56.1 Stmt., ¶¶ 29-38.

Plaintiff General Refining claims that the terms and conditions FedEx claims were violated are buried in voluminous booklets and fine-print external to the actual contract. Furthermore, Plaintiff claims that FedEx was aware that Plaintiff's customers regularly used Plaintiff's shipping airbills and in fact, helped orchestrate that arrangement, and misled Plaintiff to believe that those packages were insured as a result of Plaintiff paying the increased declared valuation. Plaintiff claims it is been damaged by this breach of contract in the amount of approximately $1 million over the last six years. Pl. 56.1 Stmt, ¶ 11-15.

## DISCUSSION

### I. Legal Principles

#### A. Standards on Motion for Summary Judgment

The standards for summary judgment are well settled. Rule 56(a) of the Federal Rules of Civil Procedure states that summary judgment is appropriate only if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a); Mihalik v. Credit Agricole Cheuvreux North America, Inc., 2013 WL 1776643 (2d Cir. 2013). The moving party bears the burden of showing entitlement to summary judgment. See Huminski v. Corsones, 396 F.3d 53, 69 (2d Cir. 2005). In the context of a Rule 56 motion, the court "is not to weigh the evidence but is instead required to view the evidence in the light most favorable to the party opposing summary judgment, to draw all reasonable inferences in favor of that party, and to eschew credibility assessments." Amnesty

Am. v. Town of W. Hartford, 361 F.3d 113, 122 (2d Cir. 2004).

Once the moving party has met its burden, the opposing party "'must do more than simply show that there is some metaphysical doubt as to the material facts .... [T]he nonmoving party must come forward with specific facts showing that there is a genuine issue for trial.'" Caldarola v. Calabrese, 298 F.3d 156, 160 (2d Cir. 2002), quoting, Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986). As the Supreme Court has stated, "the mere existence of some alleged factual dispute between the parties" alone will not defeat a properly supported motion for summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986). The nonmoving party may not rest upon mere conclusory allegations or denials but must set forth "'concrete particulars'" showing that a trial is needed. R.G. Group, Inc. v. Horn & Hardart Co., 751 F.2d 69, 77 (2d Cir. 1984), quoting, SEC v. Research Automation Corp., 585 F.2d 31, 33 (2d Cir.1978). Accordingly, it is insufficient for a party opposing summary judgment "'merely to assert a conclusion without supplying supporting arguments or facts.'" BellSouth Telecomms., Inc. v. W.R. Grace & Co., 77 F.3d 603, 615 (2d Cir. 1996), quoting, Research Automation Corp., 585 F.2d at 33.

"[A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial. ... There is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. ... If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Anderson, 477 U.S. at 248-250 (citations omitted).

II. The Present Motion

Plaintiff's complaint alleges two claims: breach of contract and mistake, on behalf of itself and other members of the Class. Plaintiff's Second Amended Complaint ("Pl. Cmplt."), ¶ 41-56. Defendant moves for summary judgment, arguing that Plaintiff's mistake claim is preempted by the Airline Deregulation Act of 1978 ("ADA"); that the breach of contract claim fails as a matter of law; and that Plaintiff has not pursued nor can it support class claims and they should be denied.[2]

A. Preemption of the Mistake Claim

1. The Legal Standards

Defendant argues that the ADA preempts Plaintiff's claim for mistake. The ADA regulates the interstate airline industry and it includes a preemption clause, which reads: "[A] State ... may not enact or enforce a law, regulation, or other provision having the force and effect of law related to a price, route, or service of an air carrier...." 49 U.S.C.A. § 41713(b)(1).

In the case of Morales v. Trans World Airlines, Inc., 504 U.S. 374, 378, 112 S.Ct. 2031, 2034, 119 L.Ed.2d 157 (1992), the Supreme Court held that certain guidelines created by the National Association of Attorneys General ("NAAG") that purported to regulate air travel advertising were sufficiently "related to price, route or service" of an airline carrier and thus were preempted by the ADA. Id., at 378-379, 391, 112 S.Ct., at 2035, 2041.

---

[2]Defendant also argues that if Plaintiff is attempting to inject claims such as false pretense, unjust enrichment and unconscionability into the action through counsel's letter to the Court concerning this motion, such attempts should be denied. As noted above, these claims are not stated in the Second Amended Complaint, nor has Plaintiff moved to amend its complaint to assert such claims. Therefore, those claims are not properly before the Court and Defendant's argument that they be dismissed are superfluous.

Subsequently, in American Airlines, Inc. v. Wolens, 513 U.S. 219, 115 S.Ct. 817 (1995), the Supreme Court again addressed the issue of preemption by the ADA. At issue were claims that changes in American Airline's frequent flyer program devalued mileage credits and constituted a violation of the Illinois Consumer Fraud and Deceptive Business Act ("Consumer Fraud Act"), and a breach of contract. In evaluating whether the ADA preemption clause applied to these claims, the Supreme Court found that claims addressed to allegedly fraudulent airline advertising techniques were preempted. The Court stated that "[i]n light of the ... ADA's purpose to leave largely to the airlines themselves, and not at all to States, the selection and design of marketing mechanisms appropriate to the furnishing of air transportation services," plaintiffs' claims under the Consumer Fraud Act were preempted. Id., at 228, 115 S.Ct. at 823-824.

Yet, the Court in Wolens took a different view of the breach of contract claims. It found that the private nature of agreements parties make themselves should be enforceable in Court. "We do not read the ADA's preemption clause, however, to shelter airlines from suits alleging no violation of state-imposed obligations, but seeking recovery solely for the airline's alleged breach of its own, self-imposed undertakings." Id., at 228, 115 S.Ct. at 824. "A remedy confined to a contract's terms simply holds parties to their agreements -- in this instance, to business judgments an airline made public about its rates and services." Id. Thus, the preemption clause precludes States from imposing standards that affect price, routes, or services, "but not from affording relief to a party who claims and proves that an airline dishonored a term the airline itself stipulated. This distinction between what the State dictates and what the airline itself undertakes confines courts, in breach-of-contract actions, to the parties' bargain, with no enlargement or enhancement based on state laws or policies external to the agreement." Id., at 232-233, 115

S.Ct. at 826. See also Dover v. British Airways, PLC (UK), WL 5970688, *4 (E.D.N.Y. 2013) (following Wolen, plaintiff's claims concerning fuel surcharges rely solely on contractual obligations and are not preempted). Other courts in this Circuit have extrapolated on this reasoning when determining when a claim is preempted. See Weiss v. El Al Israel Airlines, 309 Fed.Appx. 483, 484-485 (2d Cir. 2009) (plaintiff's tort claim for failure to seat a booked customer is a "service" and thus preempted by the ADA); but see Jimenez-Ruiz v. Spirit Airlines, Inc., 794 F.Supp.2d 344, 349 (D. Puerto Rico 2011) (personal injury claim under common law negligence does not emanate from state regulation of the airlines and is not preempted by the ADA.)

### 2. Disposition of the Motion

Defendants cite the Morales and Wolens cases and acknowledge that the breach of contract claim here is not preempted, yet argue that Plaintiff's mistake claim is. Defendant likens Plaintiff's state-law mistake claim to the state enforcement claim found preempted in Morales. See Defendant's Memorandum of Law in Support ("Def. Mem."), at 5-7. Defendant's argue that the declared valuation fees "relate to" FedEx's shipping rates, and that thus Plaintiff's state law enforcement claim for Mistake" is preempted. Id., at 6.

Yet Plaintiff's claim for mistake is borne out of its contractual relationship with Fed Ex; it is not a claim for a violation of a state-imposed regulatory scheme like the claims deemed preempted in Wolens or Morales. Under New York law of mistake, rescission of a contract is "proper only when 'the mistake is so material that we can see it goes to the foundation of the agreement.'" DaSilva v. Musso, 52 N.Y.2d 543, 552 (1981), citing Belknap v. Sealey, 14 NY 143, 155 (1856); accord Dambmann v. Schulting, 75 NY 55, 64 (1878); Restatement, Contracts,

§ 502; Restatement, Contracts 2d [Tent Draft No. 10], §§ 294, 295); see also Simkin v. Blank, 19 N.Y.3d 46, 52-53, 968 N.E.2d 459, 462 (2012) (citations omitted). The mistake claim here is at essence a claim that turns on the contractual rights privately agreed between the parties.

Here, Plaintiff claims there was a mistake as to what exactly the declared valuation fees were and what coverage they provided. While it is unclear whether Plaintiff is claiming its own unilateral mistake or a mutual mistake by both parties, in either event, the claim speaks to what were the terms that these parties privately agreed to be bound by. Thus, the mistake claim is akin to a contract claim, and since it concerns the terms of this private agreement -- as opposed to a state-imposed duty -- it is not preempted by the ADA. See Wolens, 513 U.S. at 232-233, 115 S.Ct. at 826.

Nor does the mistake claim involve an enlargement of the obligations voluntarily assumed by the parties by virtue of their private agreement. See Dover v. British Airways, PLC (UK), WL 5970688, *3-4 (E.D.N.Y. 2013) (where plaintiff's claims rely solely on the terms of the contract between the parties and not any duties implicitly imposed by law, the claim is not preempted). In fact, Plaintiff's mistake claim reads like a breach of contract claim -- essentially that Plaintiff did not get what it paid for. The Complaint states that the mistake in "failing to increase [Defendant's] liability" yet "charging" for the "increased liability" damaged Plaintiff and it is "entitled to reimbursements" of the increased fees it paid. See Pl. Cmplt., ¶¶ 51-56. Furthermore, there are issues of fact as to what exactly the parties understood the terms of the contract to mean, whether there was a mistake as to any terms in the contract, and whether such terms were material. Therefore, Defendant's motion for summary judgment on this claim is

denied.[3]

### B. The Breach of Contract Claim

Defendant also seeks summary judgment on Plaintiff's breach of contract claim, arguing that Plaintiff effectively seeks to impose contractual obligations beyond those undertaken in the parties' agreement. Specifically, Defendant claims that the contract requires notice for a refund within 60 days; limits Plaintiff's ability to bring legal actions; expressly limits the liabilities that FedEx does assume; and precludes Plaintiff from permitting its customers to use its FedEx account. Relying on the reasoning in Wolens as outlined above that a contract claim must be limited to the terms of the parties' agreement, Defendant argues that these are the terms of the agreement, of which there was no breach, and therefore it is entitled to judgment as a matter of law on the breach of contract claim.

In response, the Plaintiff agrees that its claim is limited to the terms voluntarily assumed by these parties, and that Plaintiff does not "rely on New York state laws or policies external to the agreement of the parties." See Plaintiff's Memorandum in Opposition ("Pl. Mem."), at 16.

The Courts finds that issues of fact preclude granting summary judgment on either the breach of contract or mistake claim. Such issues include, *inter alia,* what knowledge, if any, did Defendant FedEx have of Plaintiff's practice of permitting its customers to use its FedEx account; what exactly the parties understood the terms of the agreement to be; whether Plaintiff

---

[3]Currently before the United States Supreme Court is the question of whether a claim for a breach of an implied duty of good faith and fair dealing, which enlarges the terms of the parties voluntarily agreed terms, is preempted by the ADA. See Ginsberg v. Northwest, Inc., 678 F.3d 873 (9th Cir. 2012), cert. granted, 133 S.Ct. 2387 (2013), argued December 3, 2013. Here, Plaintiff's mistake claim turns on the private agreement between the parties, and therefore can be sufficiently evaluated under the reasoning set forth in Wolens.

is bound by the terms contained in the FedEx Service Guide; whether Plaintiff complied with the necessary contractual terms to permit it to seek a refund; and whether FedEx breached the agreement. Construing the facts in favor of the Plaintiff as required when evaluating a motion for summary judgment, Defendant's motion is denied.

C. Rule 23 Class Claims

The Court notes that the Plaintiff first included class action claims in its Amended Complaint filed on May 3, 2012. See DE 20. These claims were also contained in the Second Amended Complaint filed on August 12, 2012. See DE 30. Since that time, Plaintiff has not moved for certification of its class claims under Rule 23. Furthermore, as Defendant notes, Plaintiff has failed to respond in its opposition papers to this motion to Defendant's argument that these Rule 23 claims should be dismissed. In light of Plaintiff's failure to prosecute these claims or defend them in connection with this motion, the Court deems them abandoned and grants Defendant's motion as to the Rule 23 class action claims. See Palmieri v. Defaria, 88 F.3d 136, 140 (2d Cir. 1996) (it is within the discretion of the district judge to dismiss a claim for failure to prosecute).

CONCLUSION

For the reasons stated above, Defendant's motion for summary judgment is denied on Plaintiff's mistake and breach of contract claims; and granted as to Plaintiff's Rule 23 class allegations.

SO ORDERED.

s/ Leonard D. Wexler
LEONARD D. WEXLER
UNITED STATES DISTRICT JUDGE

Dated: Central Islip, New York
January 17, 2014